# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# (SOUTHERN DIVISION)

| | |
|---|---|
| KRISTEN H. POTTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. CBD-18-3250 |
| | ) |
| MARYLAND GAMES, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Before the Court is Plaintiff's Motion for Mandatory Preliminary Injunction ("Plaintiff's Motion")(ECF No. 29). The Court has reviewed Plaintiff's Motion and the opposition and reply thereto. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons set forth below, the Court GRANTS Plaintiff's Motion.

### I. Factual Background

The operative documents that are before the Court without dispute are the following: 1) a Promissory Note (the "Note") negotiated between Technology Exclusive, Inc. ("TE") and Plaintiff; 2) a Security Agreement between TE and Plaintiff; and 3) a UCC Financing Statement (the "UCC Filing") filed in the State of Nevada, which happens to be the state of TE's Articles of Incorporation. The UCC Filing identifies TE as the debtor and Plaintiff as the secured party. The execution of each of these documents preceded TE's involvement with Defendant.

On or about September 14, 2017, TE and Defendant executed an Asset Purchase Agreement (the "APA") for the sale of all of TE's assets to Defendant. In October 2018, Plaintiff issued notices of default to TE with respect to the Note and Security Agreement. As a

result of the alleged default, Plaintiff invoked the authority to take possession of all collateral identified in the Security Agreement. Plaintiff contends that said collateral includes, but is not limited to, video lottery games. The Note reflects that Plaintiff is entitled to damages, presently estimated to be more than $1.5 million, from TE as a result of default. Through it all, Defendant asserts a lack of previous knowledge of the existence of the Note, the Security Agreement, or the UCC Filing between Plaintiff and TE.

## II. Analysis

### a. Plaintiff's Motion for Preliminary Injunction.

At the heart of Plaintiff's Motion is her significant concern regarding her ability to collect on any judgment that she hopes to obtain as a result TE's default. Pursuant to a provision in the Security Agreement, Plaintiff's prosecution of TE is being waged in arbitration. In her effort to recover the collateral posted by TE, Plaintiff brings the present suit against Defendant.

In light of the funding sources leading to the recent corporate creation of Defendant, Plaintiff opines that Defendant is not adequately capitalized. Plaintiff believes that obtaining a judgment against Defendant is likely to be worthless if the ordinary processes of litigation remain unchanged. Plaintiff therefore seeks injunctive relief in an effort to maintain the status quo regarding the video lottery games and the revenues generated by them, which are currently being operated by Defendant. Said lottery games are reportedly in the possession of:
1) Chesapeake Amusements, Inc. d/b/a/ Chesapeake Beach Resort and Spa's Rod 'N' Reel Restaurant; and 2) Eagle Amusements, Inc. d/b/a/ Trader's Seafood, Steak and Ale Restaurant. Plaintiff's request for injunctive relieve seeks to require Defendant to deposit with the Court, or alternatively with Defendant's counsel's trust account, certain revenues from the gaming machines and contracts.

The single issue before the Court is whether Plaintiff can satisfy the standard necessary to obtain a preliminary injunction. Guidance is provided by DiBiase v. SPX Corp., 872 F.3d 224 (4th Cir. 2017). As stated therein, "a preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." Id. at 230. In order to prevail, Plaintiff must show that she is likely to succeed on the merits, likely to suffer irreparable harm without injunctive relief, that the balance of equities tip in her favor, and that the relief is in the public interest. Id. The Court is persuaded that Plaintiff has met her burden.

### b. Success on the merits.

The essence of Plaintiff's claims sound in the law of conversion. Conversion is the intentional tort of exercising ownership or dominion over the property of another inconsistent with that person's right of ownership. Nickens v. Mount Vernon Realty Grp., LLC, 429 Md. 59, 54 A.3d 742 (2012). Under Maryland law, Plaintiff must show that Defendant, without authority or permission, physically interfered with Plaintiff's use or enjoyment of the gaming machines. To establish her claim, Plaintiff must show the superior right to possess or enjoy said machines.

Under Maryland law, if Plaintiff has a valid Security Agreement, her interest in the collateral identified therein continues despite the sale under the APA to Defendant. "A security interest . . . continues in collateral notwithstanding sale . . . or other disposition thereof unless the secured party authorized the disposition free of the security interest . . . ." Md. Code Ann. Com. Law 9-3-15(1)(LexisNexis 1999).[1][2] Plaintiff is not seeking injunctive relief regarding the disposition of collateral, as it appears that the gaming machines are actively in service. There are simply no "proceeds" to attach.

---

[1]  The language of Md. Code Ann. Com. Law 9-306 was moved to Section 9-315 in 1999.
[2]  The State of Nevada has an identical statute. Nev. Rev. Stat. Section 104.9315 (2011).

Regarding the claim for conversion, Defendant's arguments are limited to notions of acting in "good faith." Specifically, Defendant asserts the lack of actual knowledge of the security interest as well as the purchase of the assets for fair value. Defendant apparently took great pains to obtain representations from TE that it was authorized to execute the APA without encumbrance. See Asset Purchase Agreement, p. 9-10, 12-13, ECF No. 44. Sadly for Defendant, this does not go far enough.

While the policy of acting in good faith guides many legal endeavors, it is not a prevailing position with respect to a perfected security interest. A defendant may be liable for conversion even if it acted "in good faith and lacked any consciousness of wrongdoing" as long as the act is still an interference with the owner's control of the property. Nickens, at 757. In order to protect itself, Defendant was obligated to make inquiry with the State of Nevada where the UCC Filing was made. The overwhelming purpose of UCC financing statements in every state, and the statutory schemes associated therewith, is to protect purchasers in the position of Defendant from adverse circumstances similar to the present case. Defendant had a duty of inquiry which it apparently did not satisfy and which the law does not forgive.

The fact that Plaintiff also seeks to recover in her action for replevin is of no moment. While it is likely true that Plaintiff stands to gain from Defendant's continued operation of the machines, the decision not to seek actual possession of the machines is no disqualifier. As Plaintiff has a duty to mitigate damages, one might say that under the present circumstances, that this is one of the better ways to do so. Of course, Defendant is under no obligation to continue to actively use said devices. Whether Plaintiff or Defendant prevails in the action, any profit obtained will be available to the victor. Parenthetically, Defendant has offered no support for the

notion that Plaintiff elected to wait for a year before seeking to enforce her rights under the Security Agreement once a default occurred or once the APA was finalized.

Defendant argues that Plaintiff cannot lawfully operate the machines without a license in the State of Maryland. While Plaintiff cannot contest this point, the point is a rather hollow one. Plaintiff does not seek to operate the devices, she merely wants to preserve for a judicial determination the rightful owner of the revenues generated. Plaintiff did not create this potentially indirect benefit as an "end around" the legislative scheme of Maryland. Nor is Plaintiff's "prospective status as a lienholder in an illegal contract" a viable argument. The only contracts at issue from Plaintiff's perspective were negotiated and executed with TE. Plaintiff made no agreement to operate gaming machines in Maryland. Defendant's reliance on Harry Berenter, Inc. v. Berman, 258 Md. 290 (1970) provides no support as the factual underpinnings there speak to the direct actions of an unlicensed person engaging in conduct subject to regulation. Here, there is no evidence that Plaintiff has made any affirmative effort to do so.

It also should be noted that Defendant's reliance on U.S. Bank Trust Nat. Ass'n. v. Venice MD, LLC, 92 Fed. App'x 948 (4th Cir. 2004) is misplaced. Defendant's arguments imply that this case provides a shield against the requested injunctive relief. It actually hands to Plaintiff a sword for action. Plaintiff correctly notes that the contract in U.S. Bank did not use language that would reach the revenues at issue. In the present case, both the Security Agreement and the UCC Filing expressly equate "fees, payments, revenues, income . . . [and] all contracts and contract rights" as collateral. See Security Agreement, p. 1-2, and UCC Financing Statement, ECF No. 44, Exs. B and C. Given the documents provided, Plaintiff appears to possess a perfected security interest and is likely to prevail on this claim.

### c. Irreparable harm.

Plaintiff's concerns regarding the financial wherewithal of Defendant have gone unchallenged. Plaintiff claims that her efforts to discern more about Defendant's financial stability and funding through discovery have been met with resistance. While Plaintiff may be adequately compensated by recovery of the gaming devices, Plaintiff is also entitled to revenues associated with their use up to the amounts agreed to by TE in the Note. At present, Plaintiff appears to have a priority position, while Defendant's use of the machines and benefit of the revenues generated stand in the second position. In the absence of injunctive relief, the revenue stream can be put to any use by Defendant, without protecting Plaintiff's interests regarding the monies due. This concern is readily palpable. Plaintiff appears to be justified in seeking to restrict the liquidation of monetary assets. By the mere passage of time and frequency of use, it also stands to reason that the value of the gaming devices themselves are likely to decrease.

Plaintiff is not seeking to obtain direct control over all streams of revenue, merely the preservation of monies aside from those needed for ongoing operations. This appears to be a reasonable request.

### d. The equities favor Plaintiff.

Defendant's expressed equity in the Court not issuing a preliminary injunction is that it "has a vested interest in keeping the Machines operable and producing revenues to justify the expenses of its licensure and the price it paid for Machines." Defendant's Opp'n 7. At present, equity does not regard Defendant's position with favor. Plaintiff extended monies to TE as reflected in the Note. Plaintiff however, appears to be in a legitimate, priority favored position with respect to the collateral identified. Equally she appears to have acted promptly upon

discovery of the sale of assets.  Defendant is charged with constructive knowledge of Plaintiff's perfected security interest.  The equities favor Plaintiff.

The legislatures of both Maryland and Nevada have set forth methods by which monetary lenders can conduct their affairs with legal effect.  Plaintiff appears to have fully complied, while Defendant appears to have done otherwise.  It is always in the public interest to conduct one's affairs within the letter and spirit of the law.  The Court has no reservation in concluding that Plaintiff has done so here.

### III. Conclusion

Based upon the reasons set forth above, the Court hereby GRANTS Plaintiff's Motion for Preliminary Injunctive Relief.  The Court requires that all monies from Chesapeake Amusements, Inc. d/b/a/ Chesapeake Beach Resort and Spa' Rod 'N' Reel Restaurant, as well as Eagle Amusements, Inc. d/b/a/ Trader's Seafood, Steak and Ale Restaurant be deposited into the trust account of Defendant's counsel during the pendency of this action.  This injunction attaches to the subject gaming machines wherever they may be located.  The parties will discuss and agree to reasonable amounts necessary for the maintenance and operation of the gaming devices, and for appropriate records to be kept and shared between the parties.  Defendant shall also provide an accounting of all monies generated by said machines since the date of its asset purchase and provide said accounting to Plaintiff within 30 days.

April 8, 2019                                                         /s/
                                                                Charles B. Day
                                                                United States Magistrate Judge