**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | |
|---|---|
| **KRISTEN H. POTTS,**         ) | |
| ) | |
| **Plaintiff,**     ) | |
| ) | |
| **v.**                                      ) | **Civil Action No. CBD-18-3250** |
| ) | |
| **MARYLAND GAMES, LLC,**     ) | |
| ) | |
| **Defendant.**     ) | |

## MEMORANDUM OPINION

Before the Court is Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion")(ECF

54). The Court has reviewed Plaintiff's Motion and the opposition thereto. No hearing is

deemed necessary. Local Rule 105.6 (D. Md.). For the reasons set forth below, the Court

GRANTS Plaintiff's Motion.

### I.     Standard for Review

A court may grant summary judgment, "when the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Felty v.

Graves-Humphreys, 818 F.2d 1126, 1128 (4th Cir. 1987). The Court must view facts and all

reasonable inferences in favor of the nonmoving party in order to ascertain whether a genuine

issue of material fact exists. Pulliam Inv. Co. v. Cameo Properties, Inc., 810 F.2d 1282, 1286

(4th Cir. 1987); Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

However, the mere existence of some disputed facts does not automatically foreclose summary

judgment. Thompson Everett, Inc. v. National Cable Advertising L.P., 57 F.3d 1317, 1322 (4th

Cir. 1995). "Factual disputes that are irrelevant or unnecessary will not be counted." Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Rather, the disputed facts must be "material to

an issue necessary for the proper resolution of the case," and "the quality and quantity of

evidence offered to create a question of fact must be adequate to support a jury verdict."

Thompson, 57 F.3d at 1323.

The burden of demonstrating that no genuine issue of fact exists and that one is entitled to

judgment as a matter of law is on the moving party. Barwick v. Celotex Corp., 736 F.2d 946,

958 (4th Cir. 1984). The ultimate question is whether a reasonable fact finder could return a

verdict for the non-movant or whether the movant, at trial, would be entitled to judgment as a

matter of law. See, Celotex, 477 U.S. at 327; Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir.

1991).

## II.    Analysis

Plaintiff seeks summary judgment on the claim of conversion.

### A.    Undisputed Material Facts

The Court accepts the undisputed material facts as set forth in the Joint Statement

of the parties.

1. On October 16, 2015, a company called Technology Exclusive, Inc. ("TE") executed a promissory note in favor of Plaintiff in the amount of $1.5 million ("Promissory Note").

2. Pursuant to the Promissory Note, TE was to make interest-only monthly payments to Plaintiff for a period of three years, with the principal sum due and payable on or before October 16, 2018.

3. The Promissory Note states that TE will be in default if, among other things, TE failed to pay any amounts due thereunder within the cure period or if

TE breached any term of condition of the Security Agreement executed contemporaneously therewith.

4. To secure the timely payment and performance of its obligations to Plaintiff, TE executed a Security Agreement dated October 16, 2015, which granted Plaintiff a first priority security interest in all of TE's personal property (the "Collateral"), which is described with particularity in Section 1 of the Security Agreement as follows:

> All of the personal property of the Debtor, wherever located, and now owned or hereafter acquired, including . . . and, to the extent not listed above as original collateral, all other assets, personal property and rights of the Debtor, whether tangible or intangible, including but not limited to . . . gaming machines . . . exclusive licenses . . . all Proceeds and products of each of the foregoing . . . , profits, . . . .

5. The Security Agreement provides in Section 4(e) that TE "will use the Collateral only in the ordinary course of its business, for its intended purpose and in compliance with all applicable laws, statutes and local ordinances."

6. The Security Agreement provides in Section 6 that TE shall be in default thereunder in the event of an occurrence of default under the terms of the Promissory Note or a material breach of the terms of the Security Agreement.

7. The Security Agreement provides in Section 7 that in the event of a default, Plaintiff shall have all the rights and remedies of a secured party under the UCC, "including the power and authority to take possession of the Collateral and to sell or otherwise dispose of the Collateral."

8. On October 27, 2015, Plaintiff duly filed a UCC Financing Statement with the Nevada Secretary of State, the state in which TE is incorporated. The

UCC Financing Statement identified the Debtor as Technology Exclusive, Inc. and the Secured Party as Kristen Potts, and it further described the Collateral with the same language set forth in Section 1 of the Security Agreement.

9.     On or about September 14, 2017, TE entered into an Asset Purchase Agreement with Defendant (the "Asset Purchase Agreement").

10.    Pursuant to the Asset Purchase Agreement, TE purportedly sold to Defendant all of TE's assets located in Maryland.

11.    The location contracts, as referred to in the Asset Purchase Agreement, were contracts between TE and two Maryland gaming locations known as (a) Chesapeake Beach Resort & Spa and (b) Traders Seafood, Steak & Ale.

12.    On or about September 18, 2017, Defendant paid TE the sum of $1.2 million for the purchase of the assets under the Asset Purchase Agreement.

13.    TE did not make the required monthly interest payment to Plaintiff that was due on October 1, 2018 under the Promissory Note.

14.    On or about October 5, 2018, Plaintiff's counsel sent a certified default letter to TE notifying TE of its failure to make the required interest payment due on October 1, 2018.

15.    TE did not pay Plaintiff the sum of $1.5 million due on October 16, 2018 under the Promissory Note.

16.    On or about October 17, 2018, Plaintiff's counsel sent a certified default letter to TE notifying TE of its failure to make the required payment of $1.5 million due on October 16, 2018.

17.    TE has not cured the defaults and, pursuant to the Promissory Note, currently owes Plaintiff $1.5 million plus accrued interest since its last payment in September 2018.

18.   Plaintiff is currently owed the principal sum of $1.5 million together with interest under the Promissory Note at the rate of 7% per annum since the last payment on September 1, 2018.

19.   Defendant is now using the Collateral it purchased from TE at the two locations in Maryland run by Chesapeake and Traders to generate revenues.

20.   Defendant's bank statements since the time of the Asset Purchase Agreement show deposited income from the operations of the two Maryland gaming locations.

Joint Statement of Undisputed Facts Re Pl.'s Mot. for Summ. J., ("Joint Statement"), ECF No. 63.

### B.   The Law of Conversion

At its core, Plaintiff's position is an attempt to obtain the revenues generated by the Collateral, specifically the gaming machines which are being operated with permission of the Maryland regulatory authorities. These revenues were previously provided to TE, but following Defendant's asset purchase of TE's business, these revenues have been flowing to Defendant. "Defendant is now using the Collateral it purchased from TE at the two locations in Maryland . . . to generate revenues." Joint Statement, ¶ 19. Both the sale of the Collateral and the failure to make timely payments under the Security Agreement result in TE being in default and entitles Plaintiff to pursue her remedies against Defendant under the tort of conversion. The Court is of the view that said revenues are beyond Plaintiff's reach under such a theory. Plaintiff is entitled to the return of the Collateral with damages related to its detention, or the fair market value of the Collateral with interest.

The controlling principles under a theory of conversion can be lifted verbatim from a recent ruling of this Court.

> [I]n Maryland the common law tort of conversion contains two
> elements.  First, the plaintiff must prove the defendant exerted 'any
> distinct ownership or dominion . . . over the personal property of
> another in denial of his right or inconsistent with it.'  *Darcars
> Motors of Silver Spring, Inc. v. Borzym,* 379 Md. 249, 260, 841
> A.2d 828 (2004) (quotation omitted).  'This act of ownership for
> conversion can occur either by initially acquiring the property or
> by retaining it longer than the rightful possessor permits.'  *Id.*
> Second, the defendant must have 'an intent to exercise dominion or
> control over the goods which is in fact inconsistent with the
> plaintiff's rights.'  *Id.* at 836.  *Sprint Nextel Corp. v. Simple Cell,
> Inc.,* Civ. No. CCB–13–617, 2013 WL 3776933, at *8 (D. Md.
> July 17, 2013).  'The defendant may have the requisite intent even
> though he or she acted in good faith and lacked any consciousness
> of wrongdoing, as long as there was an intent to exert control over
> the property.'  *Darcars,* 379 Md. at 262, 841 A.2d 828.  Conversion
> may occur in a variety of circumstances.  A consignee who fails to
> return or pay for consigned goods may be held liable for
> conversion. *See, e.g., Bacon & Assocs., Inc. v. Rolly Tasker Sails
> (Thailand) Co.,* 154 Md. App. 617, 632, 841 A.2d 53 (2004).

Hellenic Ministry of Nat. Defense v. Eagle Van Line, Inc., 116 F. Supp. 3d 582, 587 (D. Md.

2015).  As set forth in the Joint Statement, Defendant clearly converted property that was subject

to a perfected security interest in favor of Plaintiff.  Said security interest provided legal notice to

Defendant of Plaintiff's interest and superior right to the Collateral.  Defendant's election to take

possession of said Collateral, no matter how innocent its motives, comes at a very high price.

Defendant acquired the Collateral and continues to exercise control over it which is inconsistent

with Plaintiff's rightful ownership.  Defendant converted Plaintiff's property beginning

September 14, 2017.

Maryland law provides alternatives in compensation to Plaintiff.  Plaintiff may recover

possession of the property or payment of its value.  Any judgment "shall separately set forth the

value of the property and any amount awarded for damage to or detention of the property."  Md.

Rule 12-602(d)(1).  Maryland case law clearly states that the measure of damages for the tort of

conversion is the value of the property at the time of conversion, plus interest.  Kalb v. Vega, 56

Md. App. 653, 665 (Md. Ct. Spec. App. 1983); Staub v. Staub, 37 Md. App. 141, 145 (Md. Ct. Spec. App. 1977).

It also cannot be reasonably disputed that the fair market value of the Collateral at the time of conversion was $1.2 million, the actual purchase price between Defendant and TE. Defendant's expressions of possibilities about the value of the Collateral are not persuasive. The excerpt from the deposition testimony of Philip Lulek, the owner of TE, does not move the needle. See Opp'n to Pl.'s Mot. for Summ. J. 6. While Defendant's evidence is equivocal and relies upon strained argument, Plaintiff position is grounded in the law and is easily applied. As articulated in the federal Treasury Regulations, the "fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of the relevant facts." United States v. Cartwright, 411 U.S. 546, 551 (1973). Even though Defendant has enjoyed the beneficial use of the Collateral since the purchase of TE's assets, on this record Plaintiff is only entitled to the fair market value of the Collateral and interest since the date of conversion.

The Court agrees with Defendant's interpretation of Allied Inv. Corp. v. Jasen, 354 Md. 547 (1999). Plaintiff seeks to obtain as damages the revenues generated and to some extent held by this Court's Order. (See ECF No. 53). Generally, the award of monies which are not specifically segregated or identifiable are not appropriate for a claim of conversion. Id., at 564. Aff. of Josh Belinfante, ¶ 11, ECF No. 64-1. While some monies have been segregated by the Court's Order, the ruling did not encompass all revenues nor exclude other monies in the accounts. See also, Betskoff v. Bank of Am., N.A., 538 Fed. App'x 308, 309 (4th Cir. 2013) (commingled funds under Maryland law results in the inability to pursue the funds under a theory of conversion). More importantly, Plaintiff's Motion seeks the "value of the Collateral at

the time of the conversion, plus an amount for Defendant's use of the Collateral." Pl.'s Mem. in Supp. 1, ECF No. 55. This theory excludes the revenues that may have been generated after the conversion. Here, the value of the Collateral is set at the time of conversion. The amount for the "use of the Collateral" is covered by an award of pre-judgment interest.

The law is effectively creating a forced sale of the Collateral to Defendant. Defendant has been in the unique position of being able to use the Collateral to earn a profit. Plaintiff could not have earned profits directly with possession of the Collateral due to restrictions in place by Maryland gaming officials. Nor would it be equitable to allow Plaintiff a recovery tied to Defendant's labors, contracts, and/or maintenance. As stated earlier, Plaintiff could have pursued the return of the Collateral and under said theory obtain damages due to a wrongful detention. However, Plaintiff's primary theory of recovery seeks a judgment for the fair market value of the Collateral at the time of conversion with interest.

The Court will grant the requested relief, in the amount of $1.2 million. Plaintiff is also entitled to the pre-judgment interest. The pre-judgment interest rate of 6% per annum will apply, as set forth in the Maryland State Constitution, Article III, § 57.[1] As of September 27, 2019, this yields a total judgment amount of $1,350,301.24.[2]

### III. Conclusion

For the reasons set forth above, the Court hereby GRANTS Plaintiff's Motion for Summary Judgment. Plaintiff is entitled to the judgment amount of $1,350,301.24, along with

---

[1] While the promissory note between Plaintiff and TE reflects TE's agreement to a 7% interest rate, Defendant was note a signatory to said agreement. Plaintiff's claims sound in tort law, not contract.

[2] As of September 14, 2018, the 6% rate would total $72,000. An additional $76,320 would result as of September 14, 2019, and the daily rate is approximately $221.64.

any post-judgment interest until paid.  A separate Order will accompany this Memorandum

Opinion.


September 27, 2019                                    _____/s/_____
                                                     Charles B. Day
                                                     United States Magistrate Judge